DISTRICT OF OREGON
**F I L E D**
April 03, 2015
Clerk, U.S. Bankruptcy Court

Below is an Opinion of the Court.

TRISH M. BROWN
U.S. Bankruptcy Judge

**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | Bankruptcy Case No. 14-33702-tmb13 |
| JONATHAN GRIFFITH HERBERT, and TIFFANY LYNN HERBERT, | |
| Debtors. | |
| BENDER INDUSTRIAL GROUP, INC., | Adversary Proceeding No. 14-03211-tmb |
| Plaintiff, | OPINION |
| v. | |
| TIFFANY LYNN HERBERT, | |
| Defendant. | |

This matter came before the court on cross-motions for partial summary judgment filed by defendant/co-debtor Tiffany Lynn Herbert ("Debtor") and plaintiff Bender Industrial Group, Inc. ("Bender"). Debtor was represented by Ann K. Chapman. Bender was represented by Ross Day.

In reaching my decision, I carefully reviewed both motions and the parties' memoranda in support and in opposition thereto. I also read applicable legal authorities, both as cited by the parties and as located through my own research. The following findings of fact and legal conclusions constitute my findings under Federal Rule of Civil Procedure 52(a), applicable through Federal Rule of Bankruptcy Procedure 7052. To

Page 1 - OPINION

the extent any findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the conclusions of law constitute findings of fact, they are adopted as such.

## FACTS

Debtor and her husband filed a voluntary chapter 13[1] petition on June 25, 2014.  Joint Stmt of Agreed Facts ("JSOF," ECF No. 39) ¶ 1.  Debtor is a former employee of Bender.  Prior to filing her bankruptcy petition, Debtor had stolen funds from Bender, and Bender had obtained a prepetition civil judgment against Debtor in the amount of $16,724.16 plus costs.  JSOF, Exh. K (the "Civil Judgment").

In addition to the civil litigation commenced by Bender, Debtor was convicted in a criminal proceeding and ordered to pay restitution pursuant to the Oregon criminal code.  JSOF, Exh. D (the "Criminal Judgment") and J.  Both the civil and criminal proceedings were conducted in the Oregon Circuit Court for Washington County (the "State Court").

After Debtor commenced her bankruptcy case, Bender's attorneys sent a letter to Judge Thomas W. Kohl, of the State Court, on July 8, 2014, asking the court to "hold a probation violation hearing and [to] take any other action to enforce payment by [the Debtor]."  JSOF, Exh. E at 1.  On August 5, 2014, Bender's attorneys sent another letter to Judge Kohl, again requesting a hearing, and stating that:

> [a]lthough Tiffany Herbert filed Ch. 13 Bankruptcy on June 25 of this year, enforcement of her restitution order is not discharged under 11 USC §1328(a)(3).  This provision allows the government to collect restitution obligations that Chapter 13 bankruptcy debtors owe without first obtaining relief from the automatic stay.

JSOF, Exh. E at 4.  On August 1, 2014, Bender moved for relief from the automatic stay, although the motion does not state what actions Bender sought to take if it obtained relief from the stay.  JSOF, Exh. F.  This Court denied Bender's motion on August 26, 2014.

On August 27, 2014, following a hearing in State Court, Judge Kohl converted the balance of the unpaid restitution order into a compensatory fine and ordered monthly payments of $50, beginning October 1.  JSOF, Exh. I.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

Page 2 - OPINION

**PROCEDURAL BACKGROUND**

On September 11, 2014, Bender filed a complaint seeking a declaration that the Civil Judgment is nondischargeable. Complaint (ECF No. 1). Bender pleads three causes of action, the third of which alleges that the Civil Judgment is nondischargeable under § 523(a)(6). *Id.* ¶¶ 19-21. Debtor answered and asserted two counterclaims based on alleged violations of the automatic stay. Answer (ECF No. 6) ¶¶ 45-61. In response to Debtor's counterclaims, Bender pled six affirmative defenses. Pltf's Reply to Counterclaims (ECF No. 15) ¶¶ 17-23. Bender's sixth affirmative defense states that its actions fall within the scope of 11 U.S.C. § 362(b)(1), which excepts criminal proceedings from the automatic stay.

Debtor filed a motion for partial summary judgment (ECF No. 27), which seeks summary judgment on two issues. First, Debtor seeks summary judgment in her favor on Bender's sixth affirmative defense. Second, Debtor seeks a ruling that Bender's § 523(a)(6) claim is "at worst unfounded and at best not ripe for determination." Defendant's Mem. ISO SJ ("Defendant's Memorandum," ECF No. 28), at 2. In response, Bender filed its own motion for partial summary judgment (ECF No. 36) on its sixth affirmative defense.

**LEGAL ANALYSIS**

1. Summary Judgment Standards

A court should grant summary judgment on a claim "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) (applicable to adversary proceedings through Fed. R. Bankr. P. 7056). The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the facts and draw all inferences in the light most favorable to the non-moving party. *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1040 (9th Cir. 2003). The primary inquiry is whether the evidence presents a sufficient disagreement to require a trial, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247 (1986).

A party opposing a properly supported motion for summary judgment must present affirmative evidence of a disputed material fact from which a finder of fact might return a verdict in its favor. *Id.* at 257.

Page 3 - OPINION

A non-moving party "may not rely merely on allegations or denials in its own pleading," but must respond with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

2. <u>The Criminal Proceeding Exception</u>

Bender does not dispute that it sought to enforce the restitution component of the Criminal Judgment after Debtor's petition was filed, and without obtaining relief from the automatic stay. The disagreement between the parties centers around the proper scope of § 362(b)(1). The text of the statute provides that the automatic stay does not apply to "the commencement or continuation of a criminal action or proceeding against the debtor." 11 U.S.C. § 362(b)(1). When construing the scope of § 362, a court must interpret the scope of the stay broadly, and interpret exceptions to the stay narrowly, "to secure the broad grant of relief to the debtor." *Stringer v. Huet (In re Stringer)*, 847 F.2d 549, 552 (9th Cir. 1988).

Debtor makes two arguments why § 362(b)(1) does not apply here. First, Debtor argues that the State Court proceeding in question was somehow not within the scope of § 362(b)(1) because the case had "reached its conclusion long before the filing of Defendant's bankruptcy petition." Def. Mem. at 3-4. This argument lacks merit. Whatever the procedural posture of the case, it was a criminal matter and it retains its characteristic as a "criminal proceeding" regardless of whether the case is formally open or closed. *See U.S. v. Colasuonno*, 697 F.3d 164, 174 (2d Cir. 2012) ("[F]or purposes of § 362(b)(1), the criminal action did not end when the judgment of conviction became final. Rather, the action continued through satisfaction of the judgment because all duties imposed on the defendant, as well as the court's authority to hold the defendant to account for those duties, derive from, and in that respect continue, the original criminal action."). Debtor also adds that Bender was seeking to recover a prepetition claim and enforce a prepetition judgment, both of which are actions prohibited under § 362(a). Def. Mem. at 6. It is not clear how this is relevant. If § 362(b)(1) applies, then the occurrence of activities enumerated in § 362(a) is immaterial—the entire purpose of § 362(b) is to allow enumerated actions that would *otherwise be stayed* by § 362(a).

Debtor's second argument is that Bender cannot claim the benefits of § 362(b)(1) because Bender is a non-governmental creditor that was not party to the criminal proceeding. Def. Mem. at 6-10. This argument merits careful consideration.

Page 4 - OPINION

a.  Ninth Circuit Precedent: *In re Gruntz*

The leading Ninth Circuit case on § 362(b)(1) is *County of Los Angeles v. Gruntz (In re Gruntz)*, 202 F.3d 1074 (9th Cir. 2000) (en banc). Prior to *Gruntz*, a criminal proceeding could fall outside the scope of § 362(b)(1) if the principal aim of the proceeding was to collect a financial obligation. *Hucke v. State of Oregon*, 992 F.2d 950, 953 (9th Cir. 1993). In *Gruntz*, the Court of Appeals overruled *Hucke* and held that § 362(b)(1) applies to all criminal proceedings whether or not there is a financial element. 992 F.2d at 1085-1086. Debtor acknowledges *Gruntz*, but states that the policy considerations underlying the Ninth Circuit's holding do not apply in this case, because Debtor "seeks no action by this Court to restrain or sanction the state court or any prosecutorial authority." Def. Mem. at 7.

Much of the reasoning in *Gruntz* supports the theory that § 362(b)(1) is limited to government actors. For example the opinion contains many references to state sovereignty. *E.g.*, *Gruntz*, 202 F.3d at 1084 (the "right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States." (*quoting Kelly v. Robinson*, 479 U.S. 36, 47 (1986) (internal quotation marks omitted)); *id.* at 1086 ("it is not for the bankruptcy court to disrupt that sovereign determination because it discerns an economic motive behind the criminal statute or its enforcement."). Moreover, the Court of Appeals repeatedly stresses the importance of not interfering with the work of state courts and district attorneys. *Id.* at 1085 ("Not only does our notion of cooperative federalism caution against interference with ongoing state criminal proceedings, but the theory of bankruptcy law does as well."); *id.* at 1086 ("in the case of the automatic stay, Congress has specifically subordinated the goals of economic rehabilitation and equitable distribution of assets to the states' interest in prosecuting criminals."); *id.* ("Congress clearly has instructed federal courts not to allow bankruptcy proceedings to impede such an exercise of state police powers."); *id.* ("We cannot, and should not, require a prosecutor to conduct a searching inquiry into the public spirit of the victim of a crime before proceeding with what appears to be an otherwise valid criminal prosecution." (*quoting Davis v. Sheldon (In re Davis)*, 691 F.2d 176, 179 (3d Cir. 1982) (internal quotation marks omitted)).

Perhaps most tellingly, *Gruntz* even draws a distinction between the respective roles of the government and private creditors: "any criminal prosecution of the debtor is on behalf of all the citizens of

the state, *not on behalf of the creditor*. Once the state has made an independent decision to file criminal charges, the prosecution belongs to the government, not to the complaining witness." *Id.* at 1086 (emphasis added, citation omitted). The distinction drawn by the *Gruntz* court is reinforced by Oregon law, which provides that the only parties to a criminal proceeding are the state and the accused. ORS 131.025.

Finally, the holding of *Gruntz* is narrowly framed and states only that "*state trial courts* need not seek bankruptcy court approval before commencing criminal proceedings." *Gruntz*, 202 F.3d at 1087 (emphasis added). As I read *Gruntz,* the Court of Appeals simply overruled *Hucke* without providing any guidance on whether § 362(b)(1) applies to individual non-governmental creditors. Accordingly, *Gruntz* by itself does not resolve the present case.

      b.     Other Authority

The case law cited by the parties reveals that bankruptcy courts are split on the question presented by the cross-motions in this case. Debtor relies heavily on two out-of-circuit cases. *In re Byrd*, 256 B.R. 246 (Bankr. E.D.N.C. 2000) involves a violation of the discharge injunction, although that difference is not material.[2] The debtor in *Byrd* negotiated two checks that were dishonored pre-petition. The debtor's liability on the checks was discharged in a chapter 7 bankruptcy, but the debtor was subsequently arrested on an outstanding bad-check arrest warrant, and paid the creditors in full in order to be released from custody. Finding that the creditors had not taken any affirmative actions to collect on the checks post-petition, the court denied debtor's motion for sanctions, but did so without reliance on § 362(b)(1), noting that "a *creditor* does not have the full protection of § 362(b)(1), and an entity other than the government's prosecuting authority may not commence a criminal action for the primary purpose of recovering a debt that is dischargeable in bankruptcy." *Id.* at 251 (emphasis in original).

---

[2] *Nash v. Clark County Dist. Atty's Ofc. (In re Nash)*, 464 B.R. 874, 884 (9th Cir. B.A.P. 2012) (there is "no meaningful difference between the § 362(a) stay and the § 524(a) discharge regarding noninterference in a criminal proceeding by a bankruptcy court"); *Fidler v. Donahue (In re Fidler)*, 442 B.R. 763, 767 (Bankr. D. Nev. 2010) ("The fact that the action requested invokes the injunction against collection of a debt under § 542(a)(2) rather than the automatic stay under § 362 does not change the fundamental relationship between the courts.").

Page 6 - OPINION

Debtor also cites *Pearce v. E.L.W. Corp. (In re Pearce)*, 400 B.R. 126 (Bankr. N.D. Iowa 2009), which concerns a debtor who owed unpaid debts to a trade creditor at the time he filed bankruptcy. The creditor determined that the debtor's non-payment constituted theft under applicable non-bankruptcy law, and filed a post-petition criminal complaint with the police department. The bankruptcy court concluded that this action violated the automatic stay:

> the Court concludes that the acts of non-governmental individuals are not excepted from the stay under § 362(b)(1). Every creditor has the right to protects [*sic*] its interests and seek to except debt from discharge under § 523(a) or object to discharge under § 727(a). Utilizing the criminal process in the manner described in this case, however, prevents the bankruptcy court from making dischargeability determinations. It allows, unfairly in this Court's view, a creditor to improve its position at the expense of other creditors.

*Id.* at 132.

There are several relevant bankruptcy court opinions from within the Ninth Circuit, which take divergent positions. In *Fidler v. Donahue (In re Fidler)*, 442 B.R. 763 (Bankr. D. Nev. 2010), Judge Markell reached a similar conclusion as the *Byrd* and *Pearce* courts. *Fidler* is another discharge-injunction case involving a debtor who was liable on dishonored checks. After Fidler received a bankruptcy discharge, two of his creditors filed bad-check complaints with the Nye County sheriff. The debtor asked the bankruptcy court to enjoin prosecution and prevent the creditors from testifying at a criminal trial. The court expressed concern that

> [i]t does seem clear from the record that [the creditors] are attempting to use the criminal proceeding as an end-run around the discharge order. It is possible to stand aside while a sovereign criminal prosecution goes forward and yet find that specific individuals have taken steps in violation of the Court's order in an attempt to collect a discharged debt. Protecting that discharge is a core function of the bankruptcy court.

*Id.* at 768. The court refused to enjoin the prosecutor, but stated that the creditors' motive "appears so improper that, if carried to its conclusion in voluntarily testifying in the state court case, [it] could constitute a violation of the bankruptcy discharge." *Id.* Accordingly, the court held the bankruptcy case open pending the outcome of the criminal case.

In contrast, Bender relies on two opinions authored by Judge Kirscher: *In re Hartung*, 258 B.R. 210 (Bankr. D. Mont. 2000) and *In re Wiard*, 2013 WL 4051351 (Bankr. D. Mont., Aug. 9, 2013). Both of these

Page 7 - OPINION

cases involved creditors who filed post-petition complaints with law enforcement authorities, resulting in criminal proceedings being initiated against the debtors. First, it is notable that *Hartung* is distinguishable based on the fact that the debtor in that case asked the bankruptcy court to prevent a criminal prosecution. *Hartung*, 258 B.R. at 213. In the instant case, Debtor does not seek such relief. More broadly, both *Hartung* and *Wiard* are premised on the axiom that "[b]ankrupcy courts were not created as a haven for criminals." *Id.* at 326 (*quoting Gruntz*, 202 F.3d at 1087 (internal quotation marks omitted)). But this observation does not resolve the matter at issue here: based on the record before this court, nothing indicates that Debtor is attempting to use bankruptcy as a "haven" to protect criminal activity. *Gruntz* makes it clear that this court cannot invalidate the State Court's orders, but simply requiring creditors to adhere to the automatic stay does not condone or encourage criminal activity.

    c.    <u>Analysis</u>

This court is persuaded by the reasoning of *Fidler*. Bankruptcy is designed to create an orderly process of reorganization, where creditors are paid and disputes are resolved. Under our federal system, this court cannot interfere with the operations of the State Court; however, this does not give Bender a license to use the State Court as a tool for short-circuiting the automatic stay. When Debtor filed her petition, Bender had several options: it could have obtained relief from the automatic stay, it could have waited to see what action the State Court would take, or it could have promptly sought a determination of non-dischargeability. Rather than engaging in the bankruptcy process, Bender instead turned to the State Court, where it urged Judge Kohl to use the machinery of the state to collect a debt on one creditor's behalf. Indeed, when it corresponded with the State Court, Bender provided inaccurate legal advice by conflating dischargeability with exemption from the automatic stay. This type of advocacy ill serves the State Court, infringes on the Debtor's "breathing spell," and disadvantages other creditors who respected the automatic stay.

Accordingly, I hold that Bender's actions as a creditor were not covered by § 362(b)(1) and Bender thus acted improperly by urging the State Court to collect a prepetition debt for the benefit of an individual creditor. Although Bender cannot raise § 362(b)(1) as an affirmative defense, this does not fully adjudicate Debtor's counterclaims. Debtor must still prove all applicable elements of a stay-violation claim if she is to

Page 8 - OPINION

1  prevail on her counterclaims.

2  3.     Section 523(a)(6) Claim

3      Debtor's Motion also seeks summary judgment on Bender's § 523(a)(6) claim. Debtor argues that
4  she has confirmed a chapter 13 plan, and thus under the super-discharge of § 1328(a), Bender cannot raise a
5  claim under § 523(a)(6). Def. Mem. at 11-13. Bender responds that it does not object to dismissal of its
6  § 523(a)(6) claim, provided that dismissal is without prejudice to Bender reasserting the claim if Debtor
7  seeks a hardship discharge. Pltf's Mem. (ECF No. 37), at 9.

8  4.     Conclusion

9      Debtor's motion for partial summary judgment on Bender's sixth affirmative defense will be granted
10 and Bender's cross-motion will be denied. Debtor's motion for partial summary judgment on Bender's
11 § 523(a)(6) claim will be granted without prejudice to Bender refiling if the Debtor seeks a hardship
12 discharge.

13     Debtor's counsel should prepare an appropriate order, which should be lodged within ten days of
14 entry of this opinion.

15                                 ###

16 cc:    Ann K. Chapman
       Christopher L. Parnell
17       Ross Day

Page 9 - OPINION